

**Tagged Opinion**

**ORDERED in the Southern District of Florida on March 11, 2011.**

Erik P. Kimball, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                    Case No. 10-40367-EPK

JOSEPH STEINBERG and                                      Chapter 7
GAIL STEINBERG,

    Debtors.
_____/

**AMENDED ORDER GRANTING CREDITOR 1ST UNITED BANK'S MOTION TO
COMPEL DEBTORS TO REAFFIRM OR REDEEM SECURED DEBT
OR SURRENDER PROPERTY AND TO DEFER DEBTORS' DISCHARGE
PENDING DETERMINATION OF CREDITOR'S MOTION[1]**

THIS MATTER came before the Court for hearing on February 17, 2011 upon *Creditor 1st United Bank's Motion to Compel Debtors to Reaffirm or Redeem Secured Debt or Surrender Property and to Defer Debtors' Discharge Pending Determination of Creditor's Motion* [DE 31] (the "Motion") filed by 1st United Bank (the "Creditor"). In the Motion, the Creditor requests entry of an order compelling Joseph Steinberg and Gail Steinberg (the "Debtors") to reaffirm the

---

[1] This order replaces the *Order Granting Creditor 1st United Bank's Motion to Compel Debtors to Reaffirm or Redeem Secured Debt or Surrender Property and to Defer Debtors' Discharge Pending Determination of Creditor's Motion* entered in the docket at DE 39.

1

debt owed to the Creditor, redeem the real property located at 4289 NW 63rd Place, Boca Raton, Florida 33496 (the "Property") that secures such debt, or surrender the Property.

On October 4, 2010, the Debtors filed a petition for relief under chapter 7 of title 11 of the United States Code. The first date set for the section 341 meeting of creditors was November 10, 2010.

In their Schedules filed with the petition, the Debtors listed the Property on Schedule A with a stated value of $425,000. They claimed their interest in the Property as exempt on Schedule C. On Schedule D, the Debtors listed the Creditor as the holder of an undisputed claim in the amount of $90,223.69 secured by what appears to be a second mortgage on the Property. Schedule D also indicates a "First Mortgage" in favor of "Chase" in the amount of $231,555.66. The Debtors' schedules thus indicate mortgage debt on the Property aggregating $321,779.35. According to the Debtors' schedules, they have significant equity in the Property.

In their statement of intention filed pursuant to 11 U.S.C. § 521(a)(2), the Debtors stated their intent to retain the Property and continue making monthly payments to the Creditor and to Chase without reaffirming these debts. Chase did not join in the Creditor's Motion or appear at the hearing thereon.

Section 521(a)(2) requires the following with respect to an individual chapter 7 debtor with scheduled debt that is secured by property of the estate:

> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
>
> (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day

period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).

The plain language of section 521(a)(2) does not allow chapter 7 debtors to retain property without redeeming the property or reaffirming the debt secured by the property. *Taylor v. AGE Federal Credit Union (In re Taylor)*, 3 F.3d 1515, 1517 (11th Cir. 1993). In this circuit, a chapter 7 debtor has only three options with respect to property subject to a lien or mortgage: (1) surrender the property; (2) redeem the property; or (3) reaffirm the debt. The Eleventh Circuit rejected the view, accepted in other circuits, that the phrase "if applicable" in section 521(a)(2)(A) allows the debtor the option to not redeem property or reaffirm the debt if he or she intends to retain the property and keep current on the debt obligation. *Id.* at 1516. Instead, the Eleventh Circuit interpreted the phrase "if applicable" to mean that the options of redemption and reaffirmation would not apply if the debtor surrenders the property. *Id.* The Eleventh Circuit also noted that the plain language of section 521(a)(2)(B) requires a debtor to perform some act within a specified period of time, and that the act of remaining current on debt by continuing monthly payments is not an act capable of performance within that period of time. *Id.* The Eleventh Circuit reasoned that "[a]llowing a debtor to retain property without reaffirming or redeeming gives the debtor not a 'fresh start' but a 'head start' since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral." *Id.*

At the hearing on the Creditor's Motion, the Debtors argued that the subsequent enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA") abrogated the Eleventh Circuit's holding in *Taylor*. In a similar case, the


Bankruptcy Court for the Middle District of Florida analyzed the BAPCPA amendments to sections 521 and 362 and concluded that the *Taylor* decision remains the law in this circuit. *In re Linderman*, 435 B.R. 715, 716-17 (Bankr. M.D. Fla. 2009); *accord Habersham Bank v. Harris (In re Harris)*, 421 B.R. 597 (Bankr. S.D. Ga. 2010). The Court agrees with and adopts the reasoning in *Linderman*.

A leading bankruptcy treatise posits that section 524(j), also enacted as part of the BAPCPA, places in doubt the analysis in the *Taylor* decision. *Collier on Bankruptcy* ¶ 521.14[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). Section 524(j) states that the discharge injunction provided under section 524(a)(2) does not apply to

> an act by a creditor that is the holder of a secured claim if - (1) such creditor retains a security interest in real property that is the principal residence of the debtor; (2) such act is in the ordinary course of business between the creditor and the debtor; and (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j). In order words, after entry of the discharge order the holder of a mortgage on the debtor's principal residence may seek and obtain periodic payments on such mortgage, in the ordinary course of business, rather than pursue an *in rem* foreclosure. In light of this provision, Collier states:

> [S]ection 524(j) . . . would not make sense if section 521(a)(2) required a debtor who retained property to redeem it or reaffirm the underlying debt in every case. Section 524(j) provides that, certain actions of a creditors [sic] holding security interests in property of the debtor do not violate the discharge injunction. If every debtor were required by section 521(a)(2) to surrender property in every case in which there was no reaffirmation or redemption, this situation could never occur. Either the property would have been surrendered, or have been redeemed from the lien, in which case the creditor would have no claim after bankruptcy, or the debt would have been reaffirmed, in which case the discharge injunction would not be applicable in the first place.

*Collier on Bankruptcy* ¶ 521.14[5].  This analysis ignores the practical impact of sections 521 and 524 in many cases that come before this Court, and it improperly assumes that the burden of section 521 extends to the secured creditor.

*Taylor* requires that a debtor affirmatively select an option with regard to property securing a pre-petition debt, including a principal residence subject to a mortgage.  The debtor's options are limited to surrendering the property, redeeming the property, or reaffirming the debt.  Particularly in the present economic climate, it is not uncommon for the mortgage debt on a debtor's principal residence to exceed the value of the home.  In many consumer cases pending in this district, the stated value of the debtor's residence is well below the total amount of all debts secured by the property.[2]  When a debtor lacks equity in his or her home, it is often unwise for the debtor to reaffirm the mortgage debt.  If the debtor does so, should the debtor later default on the mortgage obligation he or she may be liable for a potentially large deficiency obligation that would otherwise have been discharged.

Under *Taylor*, a debtor unwilling to reaffirm and unable to pay off the mortgage obligation is required to indicate an intent to surrender the home and to tender the property to the mortgagee.  However, nothing in the Bankruptcy Code requires a mortgagee to accept property surrendered by a chapter 7 debtor.  Nothing prevents the mortgagee from allowing the debtor to remain in the home.  And nothing prevents the debtor from continuing to make periodic payments on a mortgage after entry of discharge.  Indeed, section 524 specifically provides that a debtor may voluntarily pay a debt in spite of the discharge and without regard to the existence of an enforceable reaffirmation agreement.  11 U.S.C. §§ 524(f) and 524(l).

When a debtor is unwilling to enter into a reaffirmation agreement and unable to pay off the mortgage, the mortgagee may nonetheless determine that it does not wish to obtain its

---

[2] Unlike many debtors before this Court, the Debtors' schedules show that there is equity in the Property.

x

collateral or dispossess the debtor. The debtor may continue to make periodic mortgage payments in order to discourage the mortgagee from foreclosing on the property. The mortgagee may accept such payments and not seek to foreclose. Section 524(j) recognizes this possibility and specifically empowers the mortgagee to take action to seek or obtain regular mortgage payments, in the ordinary course of business, in lieu of pursuing an *in rem* foreclosure.

While the debtor cannot force the creditor to accept a non-recourse obligation, the creditor may determine that it prefers to accept a non-recourse obligation so long as the debtor continues to make periodic payments on the debt. Section 524(j) provides the creditor with that option. The conclusion stated in Collier -- that requiring the debtor to select only among the options of surrendering the collateral, redeeming the debt, or reaffirming the debt obviates the need for section 524(j) -- only makes sense if one interprets section 521 to require the secured creditor to accept its collateral and dispossess the debtor. Section 521 places no such burden on the secured creditor.

With the Court being fully advised in the premises, it is ORDERED AND ADJUDGED that:

1. The Motion [DE 31] is GRANTED.

2. Within 14 days after entry of this order, the Debtors shall file an amended statement of intention and perform the appropriate action consistent with the terms of this order.

3. If the Debtors fail to comply with paragraph 2 of this order, the Creditor may request an expedited hearing for the Court to consider granting immediate relief from the automatic stay to allow the Creditor to pursue its *in rem* rights with regard to the Property.

4. The entry of an order granting a discharge in this case shall be deferred until 30 days after entry of this order.

###

Copies furnished to:

Stephen R. Phillips, Esq.

Leslie S. Osborne, Esq.

Michael R. Bakst, Trustee

AUST